**Wells Fargo Bank, N.A.**

**AGREEMENT DATE:**
**ACCOUNT#:**
**REFERENCE #:**

## EquityLine® Account Agreement
## and Disclosure Statement (the "Agreement")

**Borrower Name:**
**MANUELA HERRERA**

**Property Address:**
**1311 N RAYMOND AVE, PASADENA, CALIFORNIA 91103**

**Mailing Address for billing purposes (if different):**
**N/A**

**Credit Line Limit:**
**149,000.00**

## SECTION 1:  MY ACCOUNT AGREEMENT

In this Agreement, the words, "I," "me," "my," and "Borrower" (which also means "we," "us," "our," and "Borrowers," if more than one customer signs below) refer to each person who signs this Agreement. The words "you," "your," "Lender," and "the Bank" refer to Wells Fargo Bank, N.A. and any successor or assign or subsequent holder of this Agreement. This Agreement governs my EquityLine Account (the "Account") with the Bank. If more than one person signs this Agreement, we are jointly and individually bound by its terms. We are separately liable to the Bank for the entire amount owed on the Account. We are each liable as a principal and not merely as a guarantor, even if one or more of us does not use the Account.

## SECTION 2:  SECURITY INTEREST

I am giving the Bank a deed of trust, mortgage or other security instrument including all modifications, addenda and amendments thereto (the "Security Instrument"), signed the same date as this Agreement. The Security Instrument gives you a security interest in the property located at the address shown above (the "Property").

## SECTION 3:  MY EQUITYLINE ACCOUNT

My Account is a revolving account. My credit limit is shown above and will be displayed on each of my billing statements. During the Draw Period (described below), my available credit will be my credit limit minus the sum of all unpaid Advances (described below) posted to my Account. During the Draw Period, as I repay the principal balance I owe on my Account, my available credit will be replenished. I agree not to request an Advance that would

EXHIBIT 1

cause my balance to exceed my credit limit. If at any time the balance of my Account exceeds my credit limit, I agree to immediately repay the amount that exceeds my credit limit.

## SECTION 4: THE DRAW PERIOD

### DRAW PERIOD

My Account has a Draw Period of ten year(s) from the date of this Agreement during which I may request Advances. I may not obtain Advances after the Draw Period ends.

At the end of the Draw Period, I may request that the Bank renew the Draw Period for an additional 10 years. The Bank may, at its option, approve my request to extend the Draw Period. I may not obtain Advances after the Draw Period ends.

If my Account is closed during the Draw Period or the Draw Period ends, the entire balance must be repaid within 20 years, according to the method of repayment detailed in Section 5, THE REPAYMENT PERIOD, below.

### ADVANCES DURING THE DRAW PERIOD

The Bank must honor my request for Advances as long as I am in compliance with all terms of this Agreement, including all modifications, addenda and amendments to it, and the Security Instrument.

As I use my Account, my available credit will be my credit limit minus the sum of all unpaid Advances. As I repay the principal balance I owe on my Account, my available credit will be replenished. I will not request an Advance that would cause the balance in my Account to exceed my credit limit, or which would violate the terms of this Agreement or any law. If I do exceed my credit limit, I agree to immediately repay the amount that exceeds my credit limit.

Each Advance I request will be in the amount of:

$300 or greater. This minimum Advance requirement does not apply to Advances obtained by using my home equity access credit card, my Wells Fargo ATM Card, or my Wells Fargo ATM & Check Card, if offered by the Bank and I select such service.

I understand that the Bank may refuse to allow any Advance if the Advance does not comply with every requirement of this Agreement. The Bank may choose at its sole discretion to make an Advance that does not comply. The Bank may allow any Advances in any sequence convenient to the Bank.

The Bank is authorized to make an Advance from my Account when it receives a request given by any person who has signed this Agreement. If there are conflicting demands made by any of us who signed this Agreement, the Bank has the option to refuse to make any Advance that has not been requested by all of us together. The Bank will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when the Bank acts upon such instructions believing them to be genuine.

### Line of Credit Advance Methods

While my Account is not in default, closed, or suspended, I may borrow money through my Account by:

- Requesting an Advance in person at any Bank branch,
- Requesting an Advance by phone,
- Transferring funds by using Wells Fargo Online®,
- In other ways the Bank authorizes from time to time,
- Obtaining a cash withdrawal or transferring funds by using my Wells Fargo ATM Card or Wells Fargo ATM & Check Card, if offered by the Bank and I select such service,
- Writing an Advance request check or draft which the Bank has provided to me,
- Home equity access credit card, if offered by the Bank and I select such service.

## PERIODIC FINANCE CHARGES

Finance charges begin to accrue immediately when funds are advanced. The periodic FINANCE CHARGE for a billing cycle is the sum of the periodic FINANCE CHARGE for each day in the billing cycle. To determine the periodic FINANCE CHARGE for a day in the billing cycle, multiply the Daily Periodic Rate by the daily balance (including current transactions) each day. To determine the daily balance, take the Account balance at the beginning of each day (excluding any unpaid FINANCE CHARGES or other charges provided for under this Agreement), add any new Advances, and subtract any payments or credits. The result is the daily balance.

The Daily Periodic Rate is equal to 1/365 (1/366 during leap years) of an Index plus a Margin. The Index is the highest Prime Rate as published in the Western Edition of *The Wall Street Journal* "Money Rates" table. The Margin, the initial Daily Periodic Rate, and the initial ANNUAL PERCENTAGE RATE are each disclosed below. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

### Lifetime Rate Cap
The Daily Periodic Rate will never exceed 0.049315% (corresponding **ANNUAL PERCENTAGE RATE** of 18.00%). This is the Lifetime Rate Cap for the Account.

### Lifetime Rate Floor
The Daily Periodic Rate will never fall below 0.011616% (corresponding **ANNUAL PERCENTAGE RATE** of 4.240%). This is the Lifetime Rate Floor for the Account.

The Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will be adjusted the day after an Index change is published in *The Wall Street Journal*. Therefore, the Daily Periodic Rate may change (increase or decrease) as often as once each day. I understand that any increase may cause me to make larger Minimum Payments.

## MY INITIAL RATE

### General
As discussed above, my Daily Periodic Rate is based on the value of the Index plus a Margin. The initial Index value that applies to my Account will be the value of the Index on the day I open my Account. The following disclosures are based on the value of the Index in effect on 06-13-2007. I understand that if I open my Account after this date, my actual Index value, Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE may be higher or lower than the rates disclosed below.

My Margin is equal to - TWO HUNDRED FIFTY THOUSANDTHS OF ONE PERCENTAGE POINT (-0.250%) (the "Margin"). As a result, unless the Lifetime Rate Cap or Lifetime Rate Floor require the Bank to apply a different rate to my Account, my initial Daily Periodic Rate is 0.021918% (corresponding **ANNUAL PERCENTAGE RATE** of 8.000%).

### Lifetime Rate Cap
My initial rate will not be based on the sum of the Index plus the Margin if this sum is greater than the Lifetime Rate Cap of 18.00%. In that event, my initial Daily Periodic Rate is 0.049315% (corresponding **ANNUAL PERCENTAGE RATE** of 18.00%).

### Lifetime Rate Floor
My initial rate will not equal the sum of the Index plus the Margin if this sum is less than the Lifetime Rate Floor of 4.240%. In that event, my initial Daily Periodic Rate is 0.011616% (corresponding **ANNUAL PERCENTAGE RATE** of 4.240%).

## MINIMUM PAYMENT
During the Draw Period, my Minimum Payment shall be equal to:

The sum of all earned and unpaid periodic FINANCE CHARGES, plus credit insurance premiums, if any. This

ELA - Multi. HCWF#153v19 (05/11/07)                                                                      3/12

Documents Processed 06-13-2007 18:49

EXHIBIT 1

amount will change in the Repayment Period.

**MY TOTAL PAYMENT DUE DURING THE DRAW PERIOD**

The "Total Payment Due" for each billing cycle will consist of my Minimum Payment together with all past due amounts, overlimit amounts and all other charges due.

I will receive billing statements from the Bank. I must pay at least the Total Payment Due by the Date Due, as shown on each billing statement.

**CREDIT LIMIT INCREASES DURING THE DRAW PERIOD**

**Borrower Requested Credit Limit Increase**
I may apply for an increase in my credit limit, and if I do so I agree to pay any application, appraisal and other fees, including increased costs for title insurance, as the Bank may require. If the Bank approves my application and increases my credit limit, I will provide and maintain such additional hazard insurance (including flood insurance, if necessary) and sign any additional documents as the Bank may require. All such increased credit amounts will be governed by the terms and conditions of this Agreement and will be secured by the Security Instrument.

**Bank Credit Limit Increase**
The Bank may from time to time in its sole discretion, approve additional credit for me under the terms of this Agreement. I will receive written notice from the Bank of any such offer to increase my credit limit. I may accept such offer of increased credit by my use of those additional funds and by signing any additional documents the Bank may require. All such increased credit amounts will be governed by the terms and conditions of this Agreement and will be secured by the Security Instrument.

**SECTION 5: THE REPAYMENT PERIOD**

I understand that I may not receive new Advances after the Draw Period ends. At that time, I will begin the Repayment Period, which will continue until the Maturity Date described below.

**MY PAYMENT DURING THE REPAYMENT PERIOD**
During the Repayment Period, my Minimum Payment will be a payment that is equal to 1/240th of the outstanding unpaid principal balance at the end of the Draw Period, plus accrued FINANCE CHARGES and credit insurance premiums, if any, plus all past due amounts, overlimit amounts and all other charges due.

**FINANCE CHARGES DURING THE REPAYMENT PERIOD**
At the end of the Draw Period, FINANCE CHARGES will continue to accrue according to the terms outlined under Section 4, Periodic Finance Charges, above.

**MATURITY DATE**
The Maturity Date on my Account shall be 20 years after the end of the Draw Period. At that time, any remaining balance must be paid in full.

**SECTION 6: AUTOMATIC PAYMENT DISCOUNT**

The Automatic Payment Discount is not applicable to this Account.

**SECTION 7: OTHER FINANCE CHARGES**

In addition to paying periodic Finance Charges, as described in Sections 4 and 5 above, I also agree to pay the following additional fees, each of which is a **FINANCE CHARGE**.

N/A

ELA - Multi. HCWF#153v19 (05/11/07)                                           4/12

Documents Processed 06-13-2007 09:49:49
EXHIBIT 1

## SECTION 8: ADDITIONAL OTHER FINANCE CHARGES AND CLOSING COSTS

I agree to pay upon the opening of my Account the other finance charges and other charges that are enumerated and disclosed on the attached final HUD Settlement Statement which is integrated by reference into this Agreement.

## SECTION 9:  ADDITIONAL FEES, COSTS AND CHARGES

In addition to the FINANCE CHARGES and closing costs described above, I agree to pay the following non-refundable fees, costs and charges, which will be owed once charged to my Account.

### ANNUAL FEE
During each year of the Draw Period, whether or not I use the Account, a $75.00 non-refundable annual fee will be charged to my Account.  This fee is waived the first year my Account is opened, and is billed beginning in the second and each succeeding year, during the Draw Period, on the anniversary date of this Agreement.

### LATE CHARGES
If my payment is more than 10 days past due, I will pay a late charge equal to the greater of five dollars ($5.00) or five percent (5%) of the Minimum Payment.

### PREPAYMENT FEE
I agree to pay a prepayment fee of $500.00.  This fee will be due and payable in full at any time within the first 3 years from the date of this Agreement if I close my Account (for any reason other than default due to non-payment, casualty loss, refinance with you or your affiliate, or termination by the Bank).  If my Account remains open (is not closed or suspended under Section 17 or 18 below) for more than 3 years from the date of this Agreement, no prepayment fee will be assessed.  No tender of a prepayment of all amounts due under this Agreement shall be effective unless and until such prepayment is accompanied by the applicable prepayment fee.

### OTHER CHARGES

To the extent allowed by law, I agree to pay the following fees if I request or authorize these additional services:

(a) **Fax Fee:**  The Bank will charge a fax fee in the amount of ten dollars ($10.00) if I request or authorize others to request any document or letter to be transmitted by facsimile (fax) machine.
(b) **Research Fee and Photocopy Fee:**  The Bank will charge a research/photocopy fee in the amount of five dollars ($5.00) per photocopy if I request or authorize others to request that the Bank research my Account or provide photocopies of Account documents for any purpose other than a billing error inquiry.
(c) **Reconveyance or Satisfaction Fee:**  The Bank will charge reconveyance and satisfaction fees as allowed by applicable law.
(d) **Stop Payment Fee:**  The Bank will charge a stop payment fee in the amount of twenty-five dollars ($25.00) if I request or authorize others to request that the Bank stop payment on a draft I have used to request an Advance.
(e) **Return Check Fee:**  The Bank will charge a return check fee in the amount of twenty-five dollars ($25.00) if I make a payment with a check that is dishonored for any reason.
(f) **Overlimit Fee:**  The Bank will charge an overlimit fee in the amount of twenty-five dollars ($25.00) for each billing cycle in which I have exceeded my credit limit or have requested an Advance that would have caused me to exceed my credit limit.
(g) **Return Advance Check Fee (insufficient funds):**  The Bank will charge a return advance check fee in the amount of twenty-five dollars ($25.00) for each check or draft used to request an Advance that is returned unpaid (dishonored) by the Bank due to the requested Advance not meeting all requirements of this Agreement.

## SECTION 10:  COLLECTION COSTS AND ATTORNEY'S FEES

If I am in default, I will pay the Bank's collection costs, attorney's fees and other expenses of enforcing the Bank's rights under this Agreement and the Security Instrument, unless prohibited by applicable law.

## SECTION 11:  METHOD OF PAYMENT

EXHIBIT 1

Depending on my chosen method of payment, the Bank will do one of the following each billing cycle, during the Draw Period and any Repayment Period, as required by applicable law:

**Billing Statement:** Provide me with a billing statement showing the Total Payment Due and the due date, and including a remittance portion that I must return with my payment.

## SECTION 12: SCHEDULED PAYMENT DUE DATE

During the Draw Period, my payment will be due monthly on the 27TH day of the month in which the payment is due.

During the Repayment Period, my payment will be due monthly on the 27TH day of the month in which the payment is due.

## SECTION 13: MY PROMISE TO PAY

I promise to pay to the order of the Bank the total of all Advances which I receive or which I authorize to be made from my Account. I promise to pay the total of any FINANCE CHARGE, plus all amounts past due, overlimit amounts, and any late charges, fees, other charges and other obligations charged to my Account under this Agreement or the Security Instrument. All payments made under this Agreement will be made in U.S. dollars. I will not mail any cash payments to the Bank. I may not use Advance request checks to make payments on my Account.

The Bank may, at its discretion, withhold a portion of the available credit on my Account up to the amount of any payment due in order to assure that my check or other payment instrument is honored.

I will make payments at the Bank's address for receiving a payment, as indicated on my payment coupon and billing statement, unless another payment method is authorized by the Bank. Each non-electronic payment I make will be accompanied by the remittance portion of my billing statement.

I understand that payments I make by mail to the address indicated on my billing statement or payment coupon will be credited to my Account as of the date received (including Saturdays, Sundays, and holidays) if the Bank receives the payment prior to 5 p.m. local time for the payment address.

Payments I make from a qualified account ("Automatic Payments") pursuant to an Authorization for Automatic Transfer will be credited to my Account on the date received (including Saturdays, Sundays, and holidays).

Payments I make at a Bank branch and received prior to established cut-off times will be credited to my Account on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and Bank observed holidays. Payments made at a Bank branch received on a Saturday, Sunday, or Bank observed holiday or after established cut-off times will be credited as of the next business day.

Payments I make online, by ATM, by telephone, or by any other means the Bank may make available to me and received prior to established cut-off times will be credited to my Account on the business day the payment is received by the Bank. For purposes of this rule, a business day includes any day other than Saturdays, Sundays, and federal holidays. Payments made online, by ATM, by telephone, or by any other means the Bank may make available to me received on a Saturday, Sunday, or federal holiday or after established cut-off times will be credited as of the next business day.

I will not make payment or authorize others to make payment for me by means of a single aggregated payment, which includes payments for this Account and any other account(s), unless the payment is made in compliance with the Bank's requirements for multiple account payments.

The Bank may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of the Bank's rights under the Agreement. The Bank's acceptance of checks or money orders labeled "payment in full," or words to that effect, will not constitute an accord and satisfaction nor a waiver of any rights the Bank has to receive full payment. If I intend to condition a payment, pay the Account in full with less than the total amount owed, or give payment instructions, I will clearly set out such intention, conditions and instructions in a separate letter accompanying my payment, and mail both to Wells Fargo Bank, N.A., P.O. Box 2993, Portland, OR 97208.

## SECTION 14: TAX DEDUCTIBILITY

I understand that I should consult a tax advisor regarding the deductibility of interest and charges under my Account.

## SECTION 15: REEVALUATION OF CREDIT QUALIFICATIONS AND CREDIT REPORTS

My signature on this Agreement authorizes the Bank to obtain credit information about me, including credit bureau reports, at any time. Such credit bureau reports may be requested or used in connection with (a) renewal or extension of this Agreement, (b) review of my Account, (c) taking any collection action, or (d) any other legitimate purposes associated with my Account. I agree to submit current financial information to the Bank upon the Bank's request. The Bank may reexamine and reevaluate my credit qualifications at any time. The Bank may report its experience with me and my Account to others, to the extent allowed by law.

## SECTION 16: PAYOFF BALANCE INFORMATION

The Bank will tell me the balance required on any given day to pay off my Account in full, if I so request. If such request is made on my behalf by an escrow holder or settlement agent during the Draw Period, the Bank may immediately freeze my Account. I agree that the Bank's receipt of such a request from an escrow holder or settlement agent will be considered to be a request by me to suspend credit privileges on my Account. While my Account is frozen, I cannot receive new Advances and the Bank will return unpaid any Advance request checks the Bank receives and will refuse to honor any other Advance request made on my Account. This payoff freeze will be lifted and my Account reopened if the request for payoff balance information is withdrawn, in which event the Bank may require written confirmation from the escrow holder or other settlement agent that the escrow or other settlement has been cancelled.

## SECTION 17: DEFAULT

I will be in default if (a) I fail to meet the repayment terms of this Agreement for any outstanding balance, or (b) there is fraud or material misrepresentation by me in connection with this Agreement, or (c) any action or inaction by me adversely affects the Bank's security in the Property, including without limitation, transfer of the Property without the Bank's consent, failure to maintain required insurance or pay required taxes, revocation or termination of any revocable trust that is an owner of the Property, or the death of any person who has signed this Agreement, or (d) I am an executive officer of the Bank and federal law governing credit extended by a bank to its executive officer, including without limitation Section 215.5(d)(4) of Federal Reserve Regulation O (12 CFR § 215.5(d)(4)), permits or requires immediate payment of my entire Account balance.

If I am in default, the Bank, subject to applicable law, may do any or all of the following: (a) close my Account immediately, without notice; (b) return unpaid any outstanding Advance request checks drawn on my Account and refuse to honor any other Advance request made on my Account; and (c) require immediate payment of the entire balance of my Account, and, if I fail to pay, exercise the Bank's rights under the Security Instrument, which may result in the loss of the Property. If I am in default, the method of determining the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will remain as described in this Agreement.

The Bank and I agree that notwithstanding any other provision of this Agreement or the Security Instrument, the Bank will have the right to terminate or suspend my Account to the extent permitted by applicable law.

Documents Processed 06-13-2007 08:42:49
EXHIBIT 1

## SECTION 18:    CLOSURE OR SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT; REINSTATEMENT OF CREDIT

### CLOSURE OR SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT BY BORROWER

Any one Borrower can close the Account by paying in full and sending a signed letter to the Bank requesting that the Account be closed. Any one Borrower may terminate the Advance feature, at any time during the Draw Period, by sending a signed letter to the Bank at the address indicated on my billing statement requesting the termination of the Advance feature. To reactivate the Advance feature on the Account during the Draw Period, the Bank will require all Borrowers to sign a written request and mail to the address indicated on my billing statement.

### SUSPENSION OF ACCOUNT, REDUCTION OF CREDIT LIMIT BY BANK

I will receive a written notice if the Bank suspends or freezes my Account or reduces my credit limit as required under applicable law. The notice will include the reason(s) for such action(s). Thereafter, if I wish to reinstate my Account or increase my credit limit, I agree to send a written request to the Bank at the address specified on my billing statement, signed by all of the Borrowers, along with satisfactory evidence to the Bank that the reason(s) for suspension or reduction of my Account no longer exist(s). I also agree to provide the Bank promptly with any additional information necessary to support my request.

The Bank may suspend the use of my Account and temporarily prohibit future Advances during the Draw Period, or the Bank may reduce my credit limit, for any reason permitted by applicable law, including without limitation, (a) if the annualized Daily Periodic Rate equals or exceeds the Lifetime Rate Cap stated herein, (b) there is any material change in my financial circumstances that the Bank reasonably believes will make me unable to fulfill my repayment obligations under this Agreement, (c) the value of the Property declines significantly below its original appraised value, as determined by the Bank, (d) my failure to comply with any material obligation under this Agreement or the Security Instrument, (e) a regulatory authority has notified the Bank that continued Advances would constitute an unsafe and unsound business practice, (f) I am in default under Section 17 above, or (g) government action prevents the Bank from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement or impairs the Bank's security interest in the Property, such that the value of the security interest is less than 120 percent of the credit limit.

In the event of a suspension of my Account, the Bank is authorized to obtain such information as may be required by the Bank, including without limitation, credit reports and appraisals of the Property, to evaluate any request by me to reinstate the Account. To the extent permitted by applicable law, I agree to pay to the Bank the cost of obtaining such additional information.

If my Account is closed or suspended for any reason, the Bank may return unpaid any outstanding Advance request checks drawn on my Account and refuse to honor any other Advance request made on my Account. I will continue to be responsible for full payment of the balance of my Account as well as all other Account obligations, according to the terms of this Agreement.

## SECTION 19:  FURTHER ASSURANCES

I agree that I will take any steps, including but not limited to, signing, filing or recording any documents, which are necessary or which the Bank deems appropriate, to be sure that my obligations to the Bank under this Agreement become and continue to be secured by the Security Instrument.

## SECTION 20:  CHANGE IN RESIDENCE OR OWNERSHIP OF THE PROPERTY

I agree to notify the Bank immediately if (a) the Property is my primary residence and I cease to live in the Property as my primary residence, or (b) there is any change in the ownership of the Property. I agree that my Account shall be closed and that the entire outstanding balance of my Account shall be due and payable immediately on any sale or other transfer of the Property, unless prohibited by applicable law. In this regard, I understand that my Account is secured by a Security Instrument containing the following or a substantially similar provision:

Upon sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary, or by operation of law, of all or any part of the Property or any interest therein, then at its sole option, the Bank may, by written notice to Trustor (or Grantor or Mortgagor), declare all obligations secured hereby immediately due and payable, except to the extent that such acceleration and in such particular circumstances where exercise of such a right by the Bank is prohibited by law.

## SECTION 21: CHANGE IN TERMS

To the extent allowed by law, I agree that the Bank may make certain changes to the terms of this Agreement at specified times or upon the occurrence of specified events. The Bank may make insignificant changes, such as changes in the address for payments, billing cycle dates, payment due dates, day of the month on which Index values are determined, Index or interest rate rounding rules, and balance computation method (if the change produces an insignificant difference in the interest or FINANCE CHARGE I am required to pay). The Bank may also make changes that will benefit me, such as additional options or a temporary reduction in rates or fees. In accordance with federal law, the Bank may also change the Index and Margin used to determine the ANNUAL PERCENTAGE RATE if the original Index is no longer available. The Bank may make any of the changes discussed above without my consent, unless applicable law provides otherwise. The Bank will give me any notice of change that is required by law. I may also agree to changes in writing.

## SECTION 22: WAIVERS

### BORROWER'S WAIVERS
I waive my rights to require the Bank to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Agreement, or who agrees to make payments to the Bank if I fail to keep my promises under this Agreement, or who signs this Agreement to transfer it to someone else, waives these rights. These persons are known as "guarantors, sureties and endorsers."

### BANK'S NON-WAIVER
The Bank may fail to make use of any of its rights under this Agreement or the Security Instrument or under applicable law on one or more occasions, or delay or partially exercise such rights, without waiving any of its rights or amending any of my obligations. The Bank may fail to make use of any of its rights or delay or partially exercise such rights against one party, without waiving any of its rights against any other party to this Agreement.

## SECTION 23: GOVERNING LAW; SEVERABILITY

All interest, fees and other amounts charged or accruing in connection with this Agreement which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, this Agreement and all related documents, as well as the rights, remedies, and duties of the Bank and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the laws of the state in which the Property is located.

If any provision of this Agreement or the Security Instrument is determined to be invalid or unenforceable by a court of competent jurisdiction, the rest of this Agreement will remain in full force and effect and enforceable according to its terms. All references in this Agreement to the singular shall include the plural and vice versa.

## SECTION 24: LOST OR STOLEN ADVANCE REQUEST CHECKS; BILLING ERRORS

### LOST OR STOLEN ADVANCE REQUEST CHECKS (WHERE AVAILABLE); BILLING ERRORS
I will immediately contact the Bank at the phone number on my billing statement and confirm by letter if any of my Advance request checks are ever lost or stolen, if there are any errors in my billing statement, or if I suspect any unauthorized use of my Account.

ELA - Multi. HCWF#153v19 (05/11/07)                                                                                           9/12

Documents Processed 06-13-2007, 15:49
EXHIBIT 1

The Bank will not return to me my cancelled Advance request checks or other Advance request instruments after paying them. The Bank will make available photocopies of my Advance request checks and other Advance request instruments upon request. I will examine my Account statements promptly in order to identify any improper or unauthorized entries. In consideration for the Bank's payment of each Advance request check, I agree that even though I will not receive the original Advance request checks, all time periods under the Uniform Commercial Code (UCC) for examining my billing statement and reporting improper entries, including the UCC's statutes of limitation with respect to forged, unauthorized, or missing signatures or endorsements, will begin from the time my Account statement is first sent or made available to me.

## UNAUTHORIZED TRANSACTIONS

I will notify the Bank if someone has transferred, or may transfer money from my Account without my permission, or if I suspect any fraudulent activity on my Account. I can call the Wells Fargo Phone Bank at the telephone number on my billing statement, anytime, 24 hours a day, 7 days a week, or advise my local Bank branch office. I may also send written notification to the Bank at the address indicated on my billing statement.

### Billing Rights – Keep This Notice For Future Use

This notice contains important information about my rights and the Bank's responsibilities under the Fair Credit Billing Act.

### Notify The Bank In Case Of Errors Or Questions About My Bill

If I think my billing statement is wrong, or if I need more information about a transaction on my billing statement, I will send a letter on a separate page to the Bank, as soon as possible, at the address listed on my billing statement. The Bank must hear from me no later than 60 days after the Bank sent me the first billing statement on which the suspected error or problem appears. I can telephone the Bank, but doing so will not preserve my rights.

In my letter, I will provide the Bank with the following information:

- My name, Account number and daytime phone number, and
- The dollar amount of the suspected error, and
- A description of the error and explanation, if possible, as to why I believe there is an error. If I need more information, I will describe the item I am not sure about.

If I have authorized the Bank to pay my Minimum Payment automatically from my checking account at the Bank, I can stop the payment of any scheduled automatic payment if I believe a billing error has occurred. To stop the payment, my letter must reach the Bank at least three business days before the automatic payment is scheduled to occur.

### My Rights And The Bank's Responsibilities After Receipt Of My Written Notice

The Bank must acknowledge my letter within 30 days, unless the Bank has corrected the error by then. Within 90 days, the Bank must either correct the error or explain why the Bank believes the billing statement was correct.

After the Bank receives my letter, the Bank cannot try to collect any amount I question, or report me as delinquent. The Bank can continue to bill me for the amount I question, including finance charges, and the Bank can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while the Bank is researching my Account, but I am still obligated to pay the parts of my bill that are not in question.

If the Bank finds that a mistake was made on my billing statement, I will not have to pay any finance charges related to the questioned amount. If the Bank didn't make a mistake, I will have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, the Bank will send me a statement of the amount I owe and the date that payment is due.

If I fail to pay the amount that the Bank determines I owe, the Bank may report me as delinquent. However, if the Bank's explanation does not satisfy me and I write to the Bank within ten days telling the Bank that I still refuse to pay, the Bank must tell anyone the Bank reports me to that I have a question about my bill. And, the Bank must tell

me the name of anyone the Bank reports me to. When the matter has been settled between the Bank and me, the Bank must tell anyone the Bank reports me to that the matter has been settled.

If the Bank does not follow the above rules, the Bank cannot collect the first $50 of the questioned amount, even if my billing statement was correct.

## SECTION 25: NOTICES

Unless applicable law requires a different method, any notice that must be given to me or to anyone else who signs, guarantees or endorses this Agreement may be given by mailing it to my address as set forth above in this Agreement, or to a different address if I have properly notified the Bank of that different address. Any notice that I may send to the Bank must be given by mailing it to the Bank at the address provided on my billing statement, unless the type of notice is more specifically addressed in this Agreement and a different address is provided herein.

If I contact you by phone, I acknowledge that telephone calls between me and the Bank or any of the Bank's affiliates may be monitored and recorded by the Bank or the Bank's affiliates to ensure that my inquiries are handled promptly, courteously and accurately.

I agree that the Bank may contact me by telephone. I agree to accept calls from the Bank at any telephone number that I provide to the Bank.

I agree to accept calls from the Bank or the Bank's designated representatives which begin with a verbal statement or taped message identifying the call as a business call from the Bank. I acknowledge and understand that some of the telephone calls between me and the Bank may be monitored and recorded to ensure that the Bank handles these calls courteously and accurately.

## SECTION 26: HOME EQUITY ACCESS CREDIT CARD ACCESS

N/A

## SECTION 27: ADDENDA

I agree to the following attached addenda, modifications or amendments:

N/A

## SECTION 28: STATE DISCLOSURES

N/A

THIS AGREEMENT, THE SECURITY INSTRUMENT AND THE CLOSING DOCUMENTS EXECUTED HEREWITH CONSTITUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT OF THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS AGREEMENT.

**NOTICE TO THE BORROWER**

**DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE THIS AGREEMENT IS SIGNED. READ THIS AGREEMENT BEFORE SIGNING IT.**

## ACKNOWLEDGMENT

Documents Processed 06-13-2007 Page 2649
EXHIBIT 1

I have received, read and retained a copy of this EquityLine® Account Agreement and Disclosure Statement (the "Agreement"), the Security Instrument, the Agreement to Provide Insurance, and the HUD Settlement Statement provided to me at the closing, all of which I agree to by signing this Agreement.  I acknowledge receipt of the EquityLine® Account Important Terms disclosure and the home equity brochure when I applied for this Account.  In addition, I hereby agree that the terms of this Agreement replace the terms of any prior oral or written agreements between the Bank and me about this Account, including, for example, any and all commitment letters and pre-approval letters between the Bank and me about this Account.

_____  (Seal)    6·13·07
BORROWER                                                    DATE SIGNED
**MANUELA HERRERA**

_____  (Seal)    _____
BORROWER                                                    DATE SIGNED

_____  (Seal)    _____
BORROWER                                                    DATE SIGNED

_____  (Seal)    _____
BORROWER                                                    DATE SIGNED

_____  (Seal)    _____
BORROWER                                                    DATE SIGNED

_____  (Seal)    _____
BORROWER                                                    DATE SIGNED

_____  (Seal)    _____
BORROWER                                                    DATE SIGNED

_____  (Seal)    _____
BORROWER                                                    DATE SIGNED

EXHIBIT 1

# Allonge for the Purpose of Note Endorsement
### To be attached to, and made part of the original note

Wells Fargo Loan Number:

Original Loan Amount:        **$149,000.00**

Borrower Name:              **Manuela Herrera**

Property Address:           **1311 N. Raymond Ave.
                            Pasadena, CA 91103**

WITHOUT RECOURSE, PAY TO THE ORDER OF:

**Goldstone Investments, LLC
14181 Yorba St, STE 100
Tustin, CA 92780**

WELLS FARGO BANK, N.A.

By: _____

**Danielle Savaria, V.P. - Loan Documentation**

## ALLONGE FOR THE PURPOSE OF NOTE ENDORSEMENT
**To be attached to, and made part of the original note**

Wells Fargo Loan Number:

Original Loan Amount:         **$149,000.00**

Borrower Name:               **Manuela Herrera**

Property Address:            **1311 N. Raymond Ave.
Pasadena, CA 91103**

WITHOUT RECOURSE, PAY TO THE ORDER OF:

**CC Drake, LLC
3857 Birch Street, Suite 843
Newport Beach, CA 92660**

**Goldstone Investments, LLC**

By: _____
   **Michael Haden, Operating Manager**

**EXHIBIT 1**

## ALLONGE TO THE NOTE

**LOAN #**

**Previous Loan #:**

**Borrower:** MANUELA HERRERA

**Date of Note:** 06/12/2007

**Loan Amount:** $149,000.00

**Property Address:** 1311 N RAYMOND AVE, PASADENA, CA  91103

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: _RAYMOND ASSET TRUST, NULEVEL PARTNERS INC. TRUSTEE_ , Without Recourse

### CC DRAKE, LLC

Signature: _Toni Eutsler_

Printed Name: _Toni Eutsler_

Title: _Vice President_

**This page is part of your document - DO NOT DISCARD**



**20071484504**    Pages:
004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/20/07 AT 08:00AM**

Fee:   19.00
Tax:    0.00
Other: 0.00
Total:  19.00

**Title Company**

# TITLE(S) :



L E A D   S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

STEWART TITLE–Riverside

Recording requested by:
**Wells Fargo Bank, N.A.**

When recorded return to
**Wells Fargo Bank, N.A.**
**Attn: Document Mgt.**
**P.O. Box 31557**
**MAC B6955-015**
**Billings MT 59107-9900**



06/20/07

**20071484504**

―――――――State of California――――――――Space Above This Line For Recording Data――
REFERENCE #: ▮▮▮▮▮▮▮▮        Account number. ▮▮▮▮▮▮▮▮

# SHORT FORM DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Short Form Deed of Trust ("Security Instrument") is **JUNE 12, 2007** and the parties are as follows:

   TRUSTOR ("Grantor"):    **MANUELA HERRERA, A MARRIED WOMAN AS HER SOLE AND SEPERATE PROPERTY**

   whose address is:    **1311 N. RAYMOND AVE, PASADENA, CALIFORNIA 91103**

   TRUSTEE·  **American Securities Company, P.O. Box 31557, Billings, MT 59107**

   BENEFICIARY ("Lender"):    **Wells Fargo Bank, N.A., 101 North Phillips Avenue, Sioux Falls, SD 57104**

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, all of that certain real property located in the County of **LOS ANGELES**, State of California, described as follows

   with the address of **1311 N RAYMOND AVE, PASADENA, CALIFORNIA 91103** and parcel number of **5728-009-014** together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above.

3. **MAXIMUM OBLIGATION LIMIT AND SECURED DEBT.** The total amount which this Security Instrument will secure shall not exceed **$ 149,000.00** together with all interest thereby accruing, as set forth in the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt ("Secured Debt") of even date herewith, and all amendments, extensions, modifications, renewals or other documents which are incorporated by reference into this Security Instrument, now or in the future. The maturity date of the Secured Debt is **JUNE 12, 2037.**

4. **FICTITIOUS DEED OF TRUST.** By the delivery and execution of this Security Instrument, Grantor agrees that all provisions and sections of the Fictitious Deed of Trust, inclusive, dated **February 1, 1997**, and recorded on **February 06, 1997** as Instrument Number **97 200895** in Book **N/A** at Page **N/A** of the Official Records in the Office of the Recorder of **LOS ANGELES** County, State of California, are hereby incorporated into, and shall govern, this Security Instrument

CADeed - short CDP.V2 (06/2005)                                                                 1/3
▮▮▮▮▮▮▮▮▮▮▮                                            Documents Processed 06-13-2007, 18:45·49

Page 32
EXHIBIT 2

3

5.  **RIDERS.**  If checked, the following are applicable to this Security Instrument. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.

[N/A] Third Party Rider

[N/A] Leasehold Rider

[N/A] Other    N/A

**SIGNATURES:**  By signing below, Grantor agrees to perform all covenants and duties as set forth in this Security Instrument.  Grantor also acknowledges receipt of a copy of this document and a copy of the provisions contained in the previously recorded Fictitious Deed of Trust (the Deed of Trust-Bank/Customer Copy).  The undersigned Grantor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE hereunder be mailed to the Grantor's address given herein.

6·13·07

Grantor  **MANUELA HERRERA**                                                                                    Date

Grantor                                                                                                                         Date

Grantor                                                                                                                         Date

Grantor                                                                                                                         Date

Grantor                                                                                                                         Date

Grantor                                                                                                                         Date

Grantor                                                                                                                         Date

Grantor                                                                                                                         Date

07 1484504

CADeed - short CDP.V2 (06/2005)                                                                          2/3

4

For An Individual Acting In His/Her Own Right·
State of California         )
                           ) ss.
County of *Los Angeles*    )

On *June 13, 2007* before me, *Desiree Y. Nunez* Notary Public, personally appeared *Manuela Herrera*

_____,

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same in ~~his/her/their~~ authorized capacity(~~ies~~), and that by ~~his/her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

[NOTARIAL SEAL]

_____
Signature

*Desiree Y. Nunez*
Print Name

DESIREE Y. NUNEZ
Commission # 1543646
Notary Public - California
Los Angeles County
My Comm. Expires Jan 10, 2009

My commission expires: *Jan. 10, 2009*

07 1484504

Document drafted and prepared by
Wells Fargo Bank, N.A. and when
Recorded, Return to:

Goldstone Investments, LLC

222 Fairway

Costa Mesa, CA 92627


03/10/2011

*20110370716*

Client: **COINS38**                                        (Space above this line for County Recorder use only)

## CORPORATION ASSIGNMENT OF DEED OF TRUST

For value received, **Wells Fargo Bank N.A.**, herein "Assignor", whose address is 2324 Overland Ave, Billings, MT 59102, the undersigned hereby grants, assigns, and transfers to:

**Goldstone Investments, LLC**

**14181 Yorba St, STE 100**

**Tustin, CA 92780**

herein "Assignee" it's successors and/or assigns, all its right, title, and all beneficial interest under that certain Deed of Trust herein "Security Instrument" dated **06/12/2007**, in the amount of **$149,000.00**, executed by **Manuela Herrera, a Married Woman as Her Sole and Separate Property**, Trustor, **Wells Fargo Bank N.A.**, Original Beneficiary, and given to **American Securities Company**, Trustee, recorded on **09/24/2007**, as Document or Instrument Number **20072191362** and/or in Book **N/A**, Page **N/A**, of Official Records in the County Recorder office of **Los Angeles** County, California, describing land therein as:

Property Address: **1311 N Raymond Ave., Pasadena, CA  91103**

Assessor's Parcel #:  **5728-009-014**

Legal Description:  **As described in the Security Instrument listed above.**

Signed this **11/23/2010**

                                                    **Wells Fargo Bank N.A.**

                                                    *Danielle Savaria*

                                                    **Danielle Savaria, V.P. - Loan Documentation**

---

### ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF MONTANA / COUNTY OF YELLOWSTONE    }ss.

On this **11/23/2010**, herein before me, **Jamie L. Koszuta**, personally appeared **Danielle Savaria, V.P. - Loan Documentation**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Jamie L. Koszuta*

**Jamie L. Koszuta**, Notary Public for the State of Montana
Residing at **Billings**, MT
My Commission Expires: **09/30/2014**


JAMIE L. KOSZUTA
NOTARY PUBLIC for the
State of Montana
Residing at Billings, Montana
My Commission Expires
September 30, 2014

When recorded return to:
CCDrake, LLC
3857 Birch St STE 610
Newport Beach, CA 92660



03/10/2011

*20110370717*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### CORPORATION ASSIGNMENT OF DEED OF TRUST

For value received, **Goldstone Investments, LLC** , its successors and/or assigns "herein "Assignor"  whose address is, **222 Fairway Costa Mesa, CA 92627** hereby grants, assigns and transfers without recourse to:
CCDrake, LLC
3857 Birch St. STE 610 Newport Beach, CA 92660
Herein "Assignee", it's successors and/or assigns, all it's right, title and beneficial interest under that certain Deed of Trust dated **06/12/2007**, executed by **Manuela Herrera, a Married Woman as Her Sole and Separate Property,** for **$149,000.00** and recorded on **09/24/2007**, as Instrument No. **20072191362** in book **N/A** and page **N/A** of Official Records in the office of the County Recorder of **Los Angeles** County, state of **California** describing land therein as:

Property Address:     **1311 N Raymond Ave., Pasadena, CA 91103**
Assessor's Parcel #:    **5728-009-014**
Legal Description:      **As described in the Security Instrument listed above**

IN WITNESS WHEREOF, the undersigned, Michael Haden, has executed this Assignment of Deed of Trust

Dated: Feb. 4, 2011

Goldstone Investments, LLC

Michael Haden, President

Witness: Micki S Fedan

Witness: Kristen Hammer

State of California
County of Orange
On 8TH DAY OF FEB. 2011 before me, SUN MI LEE a Notary Public, personally appeared Michael Haden,  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Document drafted and prepared by
Alisa Watkins

Goldstone Investments, LLC, Manager

Signature
(Seal)

SUN MI LEE
COMM. #1758188
Notary Public-California
ORANGE COUNTY
My Comm. Exp. July 21, 2011

ESI1   ESI1



02/25/2014

*20140195996*

Recording Requested By:

When Recorded Return To:

NuLevel Partners Inc.
3638 University Avenue, #203
Riverside, CA 92501
A.P.N.: 5728-009-014

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California ▌▌▌▌▌          "HERRERA"
INVESTOR #:

For Value Received, CC DRAKE, LLC at 3857 BIRCH ST, STE 610, NEWPORT BEACH, CA 92660 hereby grants, assigns and transfers to RAYMOND ASSET TRUST, NULEVEL PARTNERS INC Trustee at 3638 UNIVERSITY AVE STE 203 RIVERSIDE CA 92501   all beneficial interest under that certain Deed of Trust dated 06/12/2007 , in the amount of $149,000.00, executed by MANUELA HERRERA, A MARRIED WOMAN AS HER SOLE AND SEPERATE PROPERTY to WELLS FARGO BANK, N.A.  and Recorded:  09/24/2007 as Instrument No.: 20072191362 in Los Angeles County , State of California and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

CC DRAKE, LLC
On 11/9/13

*Shawna Werner*

Shawna Werner, Assistant Vice President

STATE OF MISSOURI
COUNTY OF STONE

On 11/9/13        , before me, H. MCCANDLESS, a Notary Public in and for STONE in the State of MISSOURI, personally appeared Shawna Werner, Assistant Vice President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*H. McCandless*

H. MCCANDLESS
Notary Expires: 12/18/2016  #12426371
(This area for notarial seal)

H. MCCANDLESS
Notary Public, Notary Seal
State of Missouri
Stone County
Commission # 12426371
My Commission Expires December 18, 2016

*CK*CKAMRC*11/13/2013 04:14:00 PM* AMRCT0AMRCA0▌▌▌▌▌CALOS A* 2020001097 CASTATE_TRUST_ASSIGN_ASSN *JMB*JMHAMRC*